IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TRICIA J.,[1] § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § Civil Action No. 4:25-CV-00683-BU <br> FRANK BISIGNANO, § <br> Commissioner of Social Security, § <br> § <br> Defendant. § <br> § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's appeal of the Social Security Administration's denial of Disability Insurance Benefits (DIB). For the reasons explained below, the Court AFFIRMS the decision of the Commissioner of Social Security denying Plaintiff's application for DIB.

## I. JURISDICTION

The Court has subject matter jurisdiction under 42 U.S.C. § 405(g) because Plaintiff seeks judicial review of the final decision of the Commissioner. Dkt. No. 11 at 5 Venue is proper in the Northern District of Texas, Fort Worth Division, because Plaintiff resides in Tarrant County, Texas. Dkt. No. 1 at 1; 42 U.S.C. § 405(g). This case was automatically referred to the undersigned with a designation to exercise the district court's full jurisdiction and conduct all proceedings in this case upon the consent of the parties. *See* Special

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

Order No. 3-350 (N.D. Tex. Sept. 11, 2023).

## II.  BACKGROUND

Plaintiff alleges a disability that began on April 4, 2022. Dkt. No. 11 at 4; Administrative Record, Dkt. No. 9 (Tr.) at 15. On the date last insured, the plaintiff was forty-four years old. Dkt. No. 11 at 5. Plaintiff has achieved at least a high school education, and has prior work experience as a customer service representative and financial agent. *Id.*

Plaintiff filed a Title II application for DIB on September 27, 2022. *Id.* at 4; Tr. at 15. The Social Security Administration denied her claim on October 23, 2023, and again upon reconsideration on June 10, 2024. Tr. at 15. On February 12, 2025, Administrative Law Judge (ALJ) Kevin Batik held a hearing regarding Plaintiff's application. Tr. at 14–15. After reviewing her applications and the information presented at the hearing, the ALJ determined Plaintiff was not disabled and denied her benefits on March 24, 2025. Dkt. No. 11 at 4, Tr. at 15. Plaintiff appealed this decision to the Appeals Council (AC) which affirmed the ALJ's denial of benefits. Dkt. No. 11 at 5.

### A.  Overview of ALJ's Decision

The ALJ conducted a hearing to review the denial of Plaintiff's application and determine whether she was disabled under the Act. Shortly after this hearing, the ALJ determined that Plaintiff was not disabled. In doing so, the ALJ made the following findings: (1) Plaintiff met the insured status requirements of the cat through December 31, 2024; (2) Plaintiff had not engaged in substantial gainful activity since April 4, 2022; (3) Plaintiff suffered the following severe impairments: degenerative disk disease of the cervical and lumbar spine, obesity, hypertension, carpal tunnel syndrome, and anxiety disorder; and (4)

2

none of these impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in the Social Security Regulations. Tr. at 17–18.

Considering these impairments, the ALJ determine that Plaintiff has a residual functioning capacity (RFC) to perform light work except she can:

> stand and/or walk for a combined four hours in an eight hour workday. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She can occasionally reach overhead with the bilateral upper extremities. The claimant can never climb ladders, ropes, or scaffolds. She can never crawl. She can understand, remember, and carry out simple tasks and instructions.

*Id.* at 20–21.

Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could not perform any past relevant work. *Id.* at 28. However, based on Plaintiff's RFC, age, education, and work experience, along with the testimony of a Vocational Expert (VE), the ALJ concluded that jobs existed in significant numbers in the national economy that she could have performed, and therefore that the Plaintiff was not disabled. *Id.* at 28–30.

### III.  LEGAL STANDARDS

To be entitled to Social Security benefits, a claimant must show that they are disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

Although a claimant bears the burden of establishing whether they meet the

requirements for a disability, an ALJ's finding that a claimant has not satisfied their burden must be based on substantial evidence. *See, e.g.*, *Belk v. Colvin*, 648 F. App'x 452 (5th Cir. 2016) (per curiam). And judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S.C. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in

Appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies their initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant is capable of performing. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

Not all errors in the Commissioner's decision necessitate an order to remand. "[P]rocedural perfection is not required" and remand is not warranted unless a plaintiff was prejudiced by the Commissioner's error. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir.2003)).

## IV. DISCUSSION

On appeal, Plaintiff raises three points of error. First, Plaintiff argues that the ALJ failed to properly weigh the medical evidence because he (1) did not explain how he

resolved conflicting medical opinions, (2) lacked evidence to support his mental capacity assessment, and (3) did not articulate a supportability and consistency assessment for Dr. Gordon's medical opinion. Second, Plaintiff argues that the ALJ failed to incorporate Dr. Gordon's medical opinion into the RFC limitation, despite acknowledging that it was persuasive. Lastly, Plaintiff argues that the ALJ failed to properly incorporate limitations imposed by the VE's testimony into his RFC. For the reasons explained below, none of the points of error raised warrant an order remanding the decision.

### A. The ALJ Explained How He Resolved Conflicting Medical Opinions

When weighing the persuasiveness of medical opinions, an ALJ is required to articulate how they considered supportability and consistency for a medical source's opinions. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but not required to, also articulate how three additional factors were considered: the relationship between the source of the opinion and the claimant, the specialization of the source of the opinion, and other factors that tend to support or contradict the opinion. §§ 404.1520c(b)(2), (c)(3)–(5).

However, a finding that different medical opinions are equally persuasive triggers a mandatory assessment of these additional factors. Specifically, if the ALJ finds that (1) two or more medical opinions "about the same issue are both equally well-supported . . . and consistent with the record," and that (2) the opinions are not exactly the same, the ALJ *must* articulate how the factors laid out in (c)(3) through (c)(5) were considered. § 404.1520c(b)(3).

It is the ALJ, not the parties, that triggers the duty to consider factors beyond supportability and consistency. The ALJ must make a finding that different medical opinions

are equally well-supported and consistent with the record. *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 497 (S.D. Miss. 2021). It is not sufficient for an ALJ to merely refer to different opinions as "somewhat persuasive;" there must be an affirmative finding that there is a "tie" between the opinions before the additional assessment is triggered.[2]

Here, the undersigned concludes that the ALJ was not required to evaluate factors beyond supportability and consistency. The ALJ describes the opinions of the two State consultants—Dr. Brown and Dr. Williams—as "somewhat persuasive." Tr. at 26. The ALJ also describes the medical opinion of Dr. Gordon as "somewhat persuasive." Tr. at 27. The Plaintiff rightly notes that these medical opinions conflict, as the State consultants concluded she has no limitations while Dr. Gordon concluded she may have difficulty managing herself and her emotions. Dkt. No. 11 at 8. However, as discussed in *Andre v. O'Malley*, the ALJ referring to all three medical opinions as "somewhat persuasive" does not constitute a finding that they are equally well-supported and consistent.

Review of the ALJ's reasoning also indicates that he did not consider the medical opinions equally well-supported and consistent. The ALJ refers to the consultant's opinion as persuasive because they were (1) consistent with each other, (2) consistent with the claimant's limited mental health treatment and limited objective findings, and (3) supported by their narratives and evidence summaries. Tr. at 26. However, the ALJ found their opinion—that the claimant had no severe medical impairment—inconsistent with her subjective

---

[2] *See, e.g.*, *Andre v. O'Malley*, No. 4:23-CV-1754, 2024 WL 3237487 at *7, *10 (S.D. Tex. June 13, 2024), *report and recommendation adopted,* No. CV H-23-1754, 2024 WL 3249316 (S.D. Tex. June 28, 2024) (ALJ conclusion that various opinions were "somewhat persuasive" did not indicate that they were equally well-supported and consistent, as they were "somewhat persuasive" for different reasons).

reports and the objective evidence. *Id.* By contrast, the ALJ refers to Dr. Gordon's opinion as persuasive because it is consistent with and supported by the benign findings found in the psychological consultative examination. *Id.* at 27. While acknowledging that Dr. Gordon's assessment of the claimant's limits and abilities was "vague," the ALJ makes no finding that his opinion was inconsistent or unsupported. *Id.*

Taken together, it is clear that the ALJ ultimately found Dr. Gordon's opinion more persuasive than the State consultants' opinions. Thus, the ALJ did not find that these opinions were equally well-supported and consistent such that assessment of the additional factors was necessary to resolve a tie. The undersigned concludes that the ALJ was therefore not required to articulate factors beyond supportability and consistency.

### B. The ALJ's Mental Capacity Assessment is Supported by Substantial Evidence

Next, the Plaintiff argues that the ALJ impermissibly played doctor when determining his RFC limitation on mental capacity because he did not explain how he arrived at his conclusion or what evidence it was based on. The RFC states, in relevant part, that the Plaintiff is "limited to understanding, remembering, and carrying out simple tasks and instructions."[3] Tr. at 21.

The undersigned concludes that the ALJ's RFC limitation is supported by

---

[3] SSA regulations use these terms to distinguish between unskilled, semi-skilled, and skilled work. Unskilled work requires an applicant to be able to "understand, carry out, and remember simple instructions." DI 25020.010(A)(3)(a). Relevant considerations for this ability include coordination with others, sustaining a schedule without special supervision, and working a normal day or week without interruptions from psychologically based symptoms. DI 25020.010(B)(2)(a). Semi-skilled and skilled work bring an "increasing requirement for understanding and memory and for concentration and persistence," including the ability to understand, remember, and carry out *detailed* instructions. DI 25020.010 (B)(4)(b) (emphasis added).

substantial evidence. The ALJ states that he relied on the "totality of the evidence" in arriving both at his conclusion that anxiety is a severe impairment and forming the RFC. Tr. at 26. He then specifies what types of evidence he relied upon: objective evidence and the Plaintiff's subjective reports. *Id.*

The ALJ was presented with the following objective evidence: (1) Plaintiff's limited treatment history; (2) the absence of mental health records showing significant cognitive deficits, such as memory loss or limited concentration spans; (3) a psychological consultative examination finding no symptoms of judgment, memory, or concentration deficits; and (4) multiple diagnoses of generalized anxiety disorder. Tr. at 22, 25. Plaintiff's subjective reports also disclosed the following: (1) allegations of difficulty with memory and following instructions; (2) difficulty concentrating, which caused her to lose her prior job; (3) claims that she has ADHD and was on medication for it; and (4) the ability to read, prepare meals, do light housekeeping, go to church, and go shopping. Tr. at 19–21.

From this body of evidence, a reasonable mind could conclude that Plaintiff is limited to simple tasks and instructions. There is evidence that Plaintiff has concentration issues that led to her leaving her prior job, and evidence that her anxiety could limit her ability to manage complicated tasks in the workplace. That a reasonable mind could arrive at the same conclusion as the ALJ is sufficient to satisfy the substantial evidence standard.

### C. The ALJ's Failure to Articulate Both Supportability and Consistency for Dr. Gordon's Opinion was Harmless Error

Next, the Plaintiff argues that the ALJ failed to articulate how he considered supportability and consistency when evaluating Gordon's medical opinion. Dkt. No. 11 at 13.

Instead, the ALJ stated that Dr. Gordon's opinion appeared consistent with and supported by the findings from Dr. Gordon's consultative examination. *Id.*

An ALJ is required to articulate how they considered supportability and consistency for a medical source's opinions. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to the relevance of the "objective medical evidence and supporting evidence" presented by a medical source to supporting the medical opinion; consistency refers to whether the medical opinion is consistent with the evidence from other medical and nonmedical sources. §§ 404.1520c(c)(1)–(2).

However, failure to articulate supportability and consistency only warrants remand if "the error was harmful." *Mojica v. King*, 764 F. Supp. 3d 541, 547–48 (W.D. Tex. 2025). Because an error is harmless when it could not have affected the administrative conclusion,[4] the issue presented is whether the ALJ's failure to *explain* his supportability and consistency analysis could have changed his finding of persuasiveness. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3–4 (5th Cir. Jan. 18, 2023). The claim raised is not whether the ALJ failed to *consider* supportability and consistency unless the failure to properly articulate the analysis makes it impossible to determine whether the ALJ "properly considered and weighed [the] opinion." *Mojica*, 764 F. Supp. 3d at 548–49.

Here, while the ALJ articulated a finding of supportability, he did not articulate a finding of consistency. The ALJ explains that he considers Dr. Gordon's opinion both

---

[4] "Harmless error occurs 'when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err.'" *Id.* at 545 (quoting *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021)).

supported by and consistent with the benign results of the consultative examination. Tr. at 27. Because the consultative examination was performed by Dr. Gordon, Tr. at 19, the examination results constitute the "objective medical evidence" presented by the source of the medical opinion—Dr. Gordon—and thus weigh towards supportability. § 404.1520c(c)(1). However, the examination does not provide any medical or nonmedical evidence from other sources, and thus does not weigh towards consistency. § 404.1520c(c)(2). The ALJ thus failed to properly articulate how he considered consistency when weighing Dr. Gordon's opinion.

Nonetheless, this error does not warrant remand because it was ultimately harmless. The Plaintiff does not argue that the ALJ failed to consider consistency, or that she suffered prejudice as a result. Instead, she argues that the ALJ's assessment is improper "because it does not adhere to the specific requirements regarding the discussion of the supportability and consistency factors." Dkt. No. 11 at 13. However, "procedural perfection is not required." *Mays*, 837 F.2d at 1364. The Plaintiff cannot justify remand solely by pointing to a procedural defect, but must also allege that the error was not harmless.

Here, the ALJ's failure to articulate a consistency analysis was harmless because the ALJ's assessment indicates that he properly considered consistency when weighing Dr. Gordon's opinion. First, he notes that both Dr. Gordon and Dr. Paul diagnosed the plaintiff with anxiety, which is an indicator of consistency. Tr. at 25. Second, he notes that the State consultants' opinions are inconsistent with the finding that the Plaintiff has anxiety. Tr. at 26. In fact, the ALJ explicitly dismisses their conclusion that the Plaintiff has no mental limitations; instead, the ALJ adopts Dr. Gordon's conclusion that the Plaintiff has some

11

limitations, noting only that Dr. Gordon's description of Plaintiff's work limitations was vague. Tr. at 25–26. When taken alongside the ALJ's proper articulation of supportability and clear conclusion that he found the opinion persuasive, Tr. at 27, the ALJ's discussion shows that he weighed the persuasiveness of Dr. Gordon's opinion.

These factors indicate that the ALJ compared Dr. Gordon's medical opinion with the evidence provided by other medical sources, and thus considered consistency. The ALJ's failure to properly articulate a consistency finding does not indicate that he failed to properly consider Dr. Gordon's medical opinion; the ALJ's error was therefore harmless, and remand is not warranted.

### D. The ALJ Properly Incorporated Dr. Gordon's Medical Opinion into His RFC

Next, the Plaintiff argues that the ALJ failed to properly incorporate Dr. Gordon's opinion into the RFC. The ALJ adopted Dr. Gordon's medical opinion that the Plaintiff may have at least some difficulty managing herself and her emotions in the workplace. Dkt. No. 11 at 14–15. At the same time, the ALJ elected to describe the Plaintiff's "specific functional limitations" in the RFC rather than adopt Gordon's opinion verbatim. *Id.* The only limitation related to the Plaintiff's mental health is that she is limited to "understanding, remembering, and carrying out simple tasks and instructions." *Id.* at 15.

Because the ALJ did not directly adopt Dr. Gordon's opinion on Plaintiff's difficulty managing herself and her emotions, Plaintiff argues that the ALJ failed to incorporate a medical opinion he deemed persuasive. *Id.* In the alternative, the Plaintiff also argues that the ALJ failed to articulate a "logical bridge" between Dr. Gordon's opinion and the ALJ's

12

RFC restriction to "simple tasks and instructions." *Id.* Because the hypothetical presented to the VE was based on the RFC, which allegedly lacks a logical connection to Dr. Gordon's persuasive opinion, the Plaintiff also argues that the finding that work existed that the Plaintiff could perform also lacks evidence. *Id.* at 15–16.

"The ALJ ... must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). "Still, in reviewing an ALJ's written decision, 'common sense, not technical perfection, is our guide.'" *Venegas v. O'Malley*, No. EP-24-CV-00001-KC-ATB, 2024 WL 5182647, at *4 (W.D. Tex. Dec. 13, 2024), *report and recommendation adopted,* No. EP-24-CV-1-KC-ATB, 2025 WL 28660 (W.D. Tex. Jan. 3, 2025) (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012)). If the logical connection between a medical opinion and an RFC limitation can be clearly inferred, the ALJ's failure to directly articulate it is not an error warranting remand.[5]

Here, there is substantial evidence to support the mental limitation in the RFC. After considering Dr. Gordon's consultative examination, which diagnosed the Plaintiff with anxiety, the ALJ concluded that the claimant suffered from a severe mental impairment. Tr. at 25. The ALJ then specifies that the RFC limitation to simple tasks and instructions accommodates that impairment. Tr. at 25–26. The ALJ reiterates this point when dismissing the State consultants' contrary finding, again concluding that anxiety is "a severe

---

[5] For example, the ALJ in *Venegas* determined that the claimant had poor concentration; the resulting RFC limited the claimant to performing detailed tasks without explaining why the claimant could not perform complex tasks. *Id.* at *5. The court affirmed the ALJ's decision; because the limit on task complexity was the only mental limitation in the RFC, the court concluded that the ALJ's consideration of relevant evidence led to the conclusion. *Id.* at *5–6 (citing *Price*, 401 F. App'x at 986).

13

impairment" and that the Plaintiff "is limited to understanding, remembering, and carrying out simple tasks and instructions." Tr. at 26.

Within this context, the discussion that the Plaintiff takes issue with is unremarkable. Dr. Gordon's examination disclosed mostly normal medical results; the only abnormal finding was that the Plaintiff had anxiety. Tr. at 25. This maps neatly onto Dr. Gordon's resulting opinion on workplace limitations, where he concludes that the Plaintiff has no difficulty in all areas except her ability to manage herself and her emotions. Tr. at 27. Rather than adopt this "vague" limitation directly, the ALJ states—now for a third time—that the Plaintiff's mental limitation is better expressed through the terms laid out in the RFC. *Id.*

The restriction on task complexity is the only one related to mental impairment, permitting the logical inference that this restriction was incorporated after considering the relevant medical opinions. *Venegas*, 2024 WL 5182647, at *5. That the restriction is twice connected explicitly to anxiety—the mental impairment underlying Dr. Gordon's workplace recommendation—only strengthens this inference. The undersigned concludes that the RFC restriction addressing task complexity is supported by substantial evidence and incorporates Dr. Gordon's medical opinion.

### E. The ALJ's RFC is Consistent with the VE's Testimony on Available Jobs

Lastly, the Plaintiff argues that the ALJ improperly relied on the VE's testimony, which incorporated additional restrictions not present in the ALJ's hypothetical and RFC.

The hypothetical presented to the VE must "incorporate reasonably all disabilities

of the claimant recognized by the ALJ."[6] *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994)). At base, the task of the ALJ is simply to present a "hypothetical question to the vocational expert that include[s] all of the limitations the ALJ acknowledged as supported by the record." *Reid v. Saul*, No. CV H-18-4562, 2019 WL 6970763, at *20 (S.D. Tex. Nov. 20, 2019), *report and recommendation adopted,* No. CV H-18-4562, 2019 WL 6910143 (S.D. Tex. Dec. 19, 2019). From there, the vocational expert need only offer examples of jobs the plaintiff can perform. *Id.*

Here, the ALJ's hypothetical presented the restrictions laid out in the RFC; pertinent here, the ALJ inquires about jobs available to employees who are "limited to combined standing or walking of [sic] for four hours out of an eight hour workday[.]" Tr. at 62. The VE responds by providing three jobs that allow employees to "sit and stand throughout the workday at their discretion." Tr. at 63. The VE adds that one of these jobs—unskilled cashier—allows employees to work in one position without moving. *Id.*

The jobs proposed by the VE clearly fit the restriction laid out in the RFC. Jobs allowing the employee to "sit and stand throughout the day at their discretion" do not require the employee to stand or walk for more than four hours; taken literally, the employee is not required to stand or walk *at all*, as the employee may "sit . . . throughout the day" at their discretion. *Id.* Any doubt is removed when the VE explicitly notes that at least one of the three jobs does not require the employee to move. *Id.*

---

[6] *Compare Bowling v. Shalala*, 36 F.3d 431, 436–37 (5th Cir. 1994) (ALJ finding that claimant cannot lift more than twenty pounds mischaracterized by hypothetical that states claimant could occasionally lift fifty pounds and frequently lift twenty pounds) *with Herring v. Astrue*, 788 F. Supp. 2d 513, 517–19 (N.D. Tex. 2011) (hypothetical and RFC referencing claimant's limitation in getting along with others was permissible despite omitting a limitation for social function, as the former limitation accounted for the latter).

15

The Plaintiff argues that the VE's response does not support the RFC because it provides "limitations regarding *standing and/or sitting*," while the RFC and hypothetical "addressed Plaintiff's ability to *stand and/or walk*[.]" Dkt. No. 11 at 16 (emphasis in original). She then argues that the ALJ's step five finding was improper because the RFC did not include the restriction that the employee could sit or stand at will. *Id.*

This reasoning misconstrues the purpose of the VE's testimony. The RFC is based on medical and non-medical evidence considered in step three, *not* the VE's testimony which is presented in step five. Tr. at 16–17, 28–29. Instead, it is the VE's testimony which must comport with the RFC's limitations. As discussed above, the VE's testimony here does so. Jobs that allow the employee to sit or stand at their discretion are merely examples that satisfy the RFC, not additional requirements that must be adopted by the ALJ.

The Plaintiff's counter-hypothetical does not lead to a contrary conclusion. During the hearing, the Plaintiff asked the VE whether any jobs existed that allowed the employee to sit, stand, and walk for less than 2.5 hours each; the VE answered that there were none. Dkt. No. 11 at 13. However, this question adds a restriction not present in the RFC; while the RFC limits *cumulative* time spent standing and walking, the Plaintiff's question limits these activities *separately*. Tr. at 62–63, 67. The employee described by the Plaintiff could only stand and sit for a combined five hours, eliminating the jobs proposed by the VE. Even combining all the time available to sit, stand, *and* walk, such an employee could only work 7.5 hours total—less than the eight hours required for full-time employment.

In short, the ALJ's hypothetical properly incorporates the claimant's restriction on standing and walking; the RFC has no limitation on sitting. Accordingly, the VE's proposed

16

jobs allow the Plaintiff to sit or stand as she pleases, and require little to no walking. These jobs satisfy the restrictions in the hypothetical, and thus also satisfy the RFC. By contrast, the Plaintiff's counter-hypothetical imposes limitations on the total time spent sitting, standing, or walking that are not present in the RFC; thus, the VE's inability to propose jobs that satisfy it is irrelevant. The undersigned concludes that the ALJ's finding that jobs existed in significant amounts in the national economy that the Plaintiff could have performed is supported by substantial evidence.

## V.  CONCLUSION

For the reasons stated above, the Court should AFFIRM the decision of the Commissioner denying Plaintiff's application for DIB benefits.

ORDERED this 12th day of February 2026.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE